**Edward R.J. PRIMBS**

v.

**The UNITED STATES.**

No. 678–81C.

United States Claims Court.

Feb. 3, 1984.

Edward R.J. Primbs, pro se.

Francis J. Sailer, Washington, D.C., with whom was Asst. Atty. Gen. J. Paul McGrath, Washington, D.C., for defendant.

## ORDER REINSTATING SUIT

COLAIANNI, Judge:

On March 22, 1983, this court dismissed plaintiff's claim against the government following his failure to respond to both defendant's motion for summary judgment and the court's order of February 25, 1983, to show cause why the claim should not be dismissed for failure to prosecute. Plaintiff subsequently moved, pursuant to RUSCC 60(b), for relief from the judgment of dismissal and for reinstatement of his suit. The court agrees that relief is in the interest of justice and appropriate under RUSCC 60(b)(6). Dismissal of plaintiff's claim is therefore vacated. Relief is based on facts presented to the court after the dismissal that established plaintiff's failure to respond to defendant's motion and the court's order was directly attributable to his attorney's inexcusable neglect and dishonesty.

### Facts

On November 6, 1977, plaintiff began employment with the United States Forest Service as a GS–5 fishery biologist. As required by 5 C.F.R. § 315.801(a), employment was to be probationary for one year. On June 16, 1978, Mr. Primbs' supervisor, David M. Jay, notified him that he would be terminated from his position "effective at close of business Friday, June 30, 1978, for failure to satisfactorily complete your probationary period."

Plaintiff first pursued administrative relief from his termination. He filed a complaint with the Civil Service Commission (Commission) on June 23, 1978, alleging political and age discrimination and violation of constitutional rights. The Commission referred his age discrimination claim to the Department of Agriculture (USDA) Office of Personnel. Those proceedings were subsequently suspended at plaintiff's request. On February 27, 1979, the Merit Systems Protection Board (MSPB, formerly the

Commission) informed plaintiff that his claim of political discrimination was not cognizable before the MSPB because it failed to allege discrimination based on "partisan" political reasons. On May 15, 1979, however, and after plaintiff's failure to respond to a previous request by the MSPB to advise whether he was prepared to proceed with his complaint, the MSPB canceled its investigation of plaintiff's termination.

Plaintiff brought suit on August 2, 1979, in the United States District Court for the District of Idaho. The district court determined that "plaintiff's claim for back pay is in excess of $10,000 and therefore is within the exclusive jurisdiction of the Court of Claims," and by order of November 13, 1981, transferred the entire case to our predecessor court pursuant to 28 U.S.C. § 1406(c).

Plaintiff filed his petition in this court on January 18, 1982. That petition alleged the following five grounds for invalidating the termination of his employment:

(1) Plaintiff's removal, as "a coercive and penal measure against plaintiff's corresponding in two instances with colleagues in his profession on professional scientific problems," violated the Forest Service Manual and the first amendment to the United States Constitution;

(2) Plaintiff's removal violated the fifth amendment "inasmuch as the plaintiff was subjected to a code of conduct which was unacceptably vague";

(3) Plaintiff's removal violated the fifth amendment because the letter of termination was "vague * * * and failed to suggest any instances of fact that would sustain the charges";

(4) Plaintiff's removal was based on political discrimination; and

(5) Plaintiff's removal was based on age discrimination.

Plaintiff asked for reinstatement and back pay, as well as damages due to defendant's illegal actions in terminating his employment.

Defendant answered on March 17, 1982. On March 18, the court ordered defendant to file a dispositive motion "[s]ince it appears that the above case can be resolved by summary action." The court initially ordered defendant to file its motion by May 3, 1982. Four motions for enlargement of time followed, and on September 10, 1982, defendant finally filed its motion for summary judgment.

By February 25, 1983, plaintiff had not responded to defendant's motion for summary judgment. On that day, the court issued an order granting plaintiff "to and including March 17, 1983, in which to show cause why the case should not be dismissed for lack of prosecution." The court received no response, and on March 22, 1983, plaintiff's petition was dismissed with prejudice.

On May 16, 1983, Mr. Primbs moved, *pro se*, for reinstatement of his suit. At that time and through supplemental filings plaintiff brought to the court's attention some highly relevant information of which it had been unaware. In particular, plaintiff established that his attorney, Michael E. Donnelly, Esq., not only failed to inform him of the court's orders to show cause and to dismiss, but actively deceived him about the status and ongoing prosecution of the case.[1] Plaintiff learned of these only after Mr. Donnelly's nervous breakdown on April 15, 1983. That breakdown prompted members of Mr. Donnelly's firm, Skinner, Donnelly, Fawcett & Mauk, to review his case files, and upon discovering the dismissal, members of the firm contacted Mr. Primbs.

---

1. In his affidavit of December 5, 1983, Mr. Donnelly admits, "Indeed, I did not advise my client, Edward Primbs, of the Court's actions and orders in this case." Furthermore, he states, "That throughout the proceedings in this case the plaintiff was always in regular contact with me and consistently urged that I diligently prosecute this action and had even prepared an eighteen (18) page affidavit in response to the defendant's motion in this case. I did not file the affidavit with the Court of Claims."

*Discussion*

Plaintiff moves for relief from this court's dismissal of his petition and asserts that RUSCC 60(b) provides basis for that relief. RUSCC 60(b), which in all pertinent parts is substantially identical to Federal Rule of Civil Procedure 60(b), provides for relief from judgments or orders because of:

(b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud; etc. On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation. This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to set aside a judgment for fraud upon the court. The procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules or by an independent action.

As an initial matter, plaintiff's motion for relief was made well within a reasonable time of dismissal. His petition was dismissed on March 22, 1983, and he moved for relief less than two months later.

In *Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396 (5th Cir.1981), the United States Court of Appeals for the Fifth Circuit explained the purpose and scope of Rule 60(b), as follows:

The purpose of Rule 60(b) is to delineate the circumstances under which relief may be obtained from the operation of final judgments, whether they are entered by default, *see* Fed.R.Civ.P. 55(c), or otherwise. By its very nature, the rule seeks to strike a delicate balance between two countervailing impulses: the desire to preserve the finality of judgments and the "incessant command of the court's conscience that justice be done in light of *all* the facts." * * *

\* \* \* \* \* \*

In sum, then, Rule 60(b) is "a grand reservoir of equitable power to do justice in a particular case," * * * that may be tapped by the district court in the sound exercise of its discretion, and within the strictures inherent in the underlying objectives of the rule.

*Id.* at 401–02 (citations omitted). *See also Thompson v. Kerr-McGee Refining Corp.*, 660 F.2d 1380, 1385 (10th Cir.1981), *cert. denied*, 455 U.S. 1019, 102 S.Ct. 1716, 72 L.Ed.2d 137 (1982); *Jackson v. Beech*, 636 F.2d 831, 835 (D.C.Cir.1980).

Rule 60(b) allows six avenues through which the court may vacate a judgment. Its first five clauses state specific reasons. Its sixth, the residual clause, enables courts "to vacate judgments whenever such action is appropriate to accomplish justice." *Klapprott v. United States*, 335 U.S. 601, 615, 69 S.Ct. 384, 390, 93 L.Ed. 266 (1949). This last clause provides the basis for the court's decision. Based upon all the circumstances of the case, this court determines that the interests of justice would best be served by vacating the judgment of dismissal and permitting this case to proceed for a judgment on the merits.

First, the court notes that "strong policies * * * [favor] the resolution of disputes on their merits." *Jackson v. Beech*, 636 F.2d at 835. And when the judgment attacked is a default judgment, "Rule 60(b) will be

liberally construed in favor of trial on the full merits of the case." *Seven Elves, Inc. v. Eskenazi,* 635 F.2d at 403.

Defendant argues that *Link v. Wabash Railroad Co.,* 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962), forecloses relief under Rule 60(b)(6). In *Link,* the Supreme Court noted that "each party is deemed bound by the acts of his lawyer-agent and is considered to have 'notice of all facts, notice of which can be charged upon the attorney.'" *Id.* at 634, 82 S.Ct. at 1390 (citation omitted). But *Link's* holding concerned the trial court's discretion to dismiss a case for failure to prosecute, and not the wholly separate issue of its power to vacate such a judgment. *Link* held:

> [W]hen circumstances make such action appropriate, a District Court may dismiss a complaint for failure to prosecute even without affording notice of its intention to do so or providing an adversary hearing before acting. Whether such an order can stand on appeal depends not on power but on whether it was within the permissible range of the court's discretion. [Footnote omitted.]

*Id.* at 633, 82 S.Ct. at 1390. The Supreme Court found, given the circumstances in *Link,* that it was "unable to say that the District Court's dismissal of this action for failure to prosecute * * * amounted to an abuse of discretion." *Id.* This holding far from mandates dismissal of a case due to an attorney's neglect or misconduct.

The propriety of this court's decision to dismiss plaintiff's petition is not in issue, however. Rather, plaintiff has presented additional evidence and arguments requesting vacation, under Rule 60(b), of the dismissal. The Supreme Court in *Link* carefully refrained from addressing the scope of a court's authority to subsequently vacate dismissal of an action. The court noted:

> In addition, the availability of a corrective remedy such as is provided by Federal Rule of Civil Procedure 60(b)—which authorizes the reopening of cases in which final orders have been inadvisedly entered—renders the lack of prior notice of less consequence. Petitioner never sought to avail himself of the escape hatch provided by Rule 60(b).

*Id.* at 632, 82 S.Ct. at 1390.

Plaintiff's suit was dismissed for failure to prosecute after he apparently declined to respond to either defendant's motion for summary judgment or this court's order to show cause. Plaintiff has now presented facts, unknown to the court when it dismissed the suit, that provide strong support for granting plaintiff relief from that dismissal. The affidavits of plaintiff, Mr. Donnelly, and Mr. Fawcett establish that Mr. Donnelly was not merely negligent in his handling of plaintiff's suit.[2] He actively

---

**2.** The court rejects plaintiff's claim that dismissal should be vacated under Rule 60(b)(1) for "excusable neglect" of his attorney. Plaintiff argues Mr. Donnelly was mentally incapacitated, thereby excusing his failure to respond to defendant's summary judgment motion and the court's order.

On November 4, 1983, in an order requiring plaintiff to supplement his motion of May 16, 1983, for reinstatement of suit, this court specifically asked plaintiff to submit "[a]ny material which shows that his attorney Michael Donnelly, Esq., was incapacitated by 'mental illness' to the extent that he was unable to perform his day-to-day duties as an attorney during the period relevant to these proceedings * * *." That relevant period could have extended no further than to the date this petition was dismissed, March 22, 1983. Without evidence, the court obviously could not find incapacity or excusable neglect based on that contention. *Cf. Shanteau v. United States,* No. 395–73, slip op. at 8–13 (Ct.Cl. Sept. 7, 1979)

(order denying motion to reopen proof; plaintiff failed to prove mental incapacity of attorney during period of representation). Plaintiff submitted no such evidence. Affidavits of Mr. Donnelly and Mr. Fawcett do no better than establish that Mr. Donnelly suffered a breakdown on April 15, 1983.

Mr. Donnelly additionally averred, however: "That my mental and emotional condition and the stress from which I was suffering precluded me at any time after February, 1983, from properly and effectively handling this matter for the plaintiff and responding to the Court's orders and directives." This statement is insufficient to establish Mr. Donnelly's incapacity prior to the date of dismissal. Obviously, Mr. Donnelly would favor reinstatement of plaintiff's suit. Mr. Donnelly's total disregard of this suit from September 10, 1982, the date defendant filed its motion for summary judgment, through the date of dismissal undoubtedly exposes him to liability for malpractice. Mr.

misled and lulled his client into believing this case was proceeding smoothly. That Mr. Donnelly's failures and deceptions would provide good reason for a malpractice action by plaintiff, however, does not relieve this court of its duty to determine whether plaintiff's suit should be reinstated.

■ Defendant argues that, following the reasoning of *Link,* Mr. Donnelly's actions should be attributed to his client for purposes of this Rule 60(b) motion. The usual understanding of the attorney-client agency relationship, however, should not bar relief under Rule 60(b) when the evidence is clear that the attorney and his client were not acting as one. The agency analysis is particularly inappropriate when the plaintiff has proven that his diligent efforts to prosecute the suit were, without his knowledge, thwarted by his attorney's deceptions and negligence. *See Jackson v. Washington Monthly Co.,* 569 F.2d 119, 122–23 (D.C.Cir.1977); *Vindigni v. Meyer,* 441 F.2d 376, 377 (2d Cir.1971).

As noted in *Jackson v. Washington Monthly Co.,* 569 F.2d at 122—

so serious a dereliction by an attorney, when unaccompanied by a similar default by the client, may furnish a basis for relief under Rule 60(b)(6). That is the more so where, as apparently here, little if any prejudice has befallen the other party to the litigation. [Footnotes omitted.]

For the reasons stated above, IT IS ORDERED that the court's order of March 22, 1983, dismissing plaintiff's petition IS VACATED.

---

Donnelly's self-serving claim of incapacity beginning in February 1983, without more, fails to persuade the court that incapacity is a valid ground on which to grant relief. *Cf. Prestex, Inc. v. United States,* 4 Cl.Ct. 14 at 20 (Cl.Ct. 1983).